```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


DONALD CHIVERTON and            :
ROSE COLLIER,                   :
                                :
     Plaintiffs,                :
                                :
     v.                         :    CASE NO.  3:00CV1654(RNC)
                                :
FEDERAL FINANCIAL GROUP, INC.,  :
                                :
     Defendant.                 :
```

RECOMMENDED RULING AFTER HEARING ON DAMAGES

I. Procedural History

The plaintiffs, Donald Chiverton and Rose Collier,[1] commenced this action against the defendant, Federal Financial Group, Inc., a debt collection agency. The plaintiffs allege that the defendant violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a et seq. The defendant did not file an appearance or answer the complaint. Pursuant to Fed. R. Civ. P. 55(a), the Clerk of the Court granted the plaintiffs' motion for default. (Doc. #7.) Thereafter, the court (Chatigny, C.J.) granted the plaintiffs' motion for default judgment as to liability only. (Doc. #8.) The court referred the case to the undersigned for a hearing on damages and attorney's fees. (Doc. #8.)

The undersigned conducted a hearing on damages at which the

---

[1] The plaintiffs are unrelated Connecticut consumers.

plaintiffs were represented by Attorney James Fischer. Plaintiff Donald Chiverton ("Chiverton") appeared and testified. Plaintiff Rose Collier ("Collier") did not appear, see doc. #16 (excusing Collier from attending hearing), and relied on her affidavit. (Doc. #10, Collier Aff.) The defendant did not appear. The following is the court's recommended ruling regarding damages.

II. Facts as to Chiverton

Based upon the allegations in the complaint (which are deemed admitted by virtue of the default),[2] exhibits, affidavits and testimony, the court makes the following findings.

In the early 1990's, Chivterton purchased a vehicle with a loan from Fleet Bank. In April 1993, Fleet Bank repossessed the vehicle after the plaintiff fell behind in his payment obligations. Chiverton owed approximately $1000 under the contract.

In March 1998, Chiverton received an offer from Figures, Inc. ("Figures"), a collection agency, to settle his account with Fleet Bank in full for $249.29. On March 22, 1998, Chiverton sent a money order for this amount to Figures and in turn, Figures sent him a letter from informing him that his debt to Fleet Bank was fully satisfied.

In July 1999, the defendant called Chiverton at work seeking

---

[2]Upon failure to plead or otherwise defend against a complaint, the plaintiff's well pled allegations are deemed admitted, except those relating to the amount of damages. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).

2

to collect the debt Chiverton formerly had owed to Fleet Bank. At the time, Chiverton was employed by the United States Department of Defense as a fiscal supervisor. Chiverton told the defendant that he had paid the debt and sent the defendant the correspondence from Figures as proof.

Notwithstanding, about two weeks later, the defendant again called Chiverton. The defendant told Chiverton that it had purchased the debt Chiverton owed to Fleet Bank and was trying to collect it. Chiverton again disputed the debt and informed the defendant that he had satisfied the debt in full. This time, Chiverton faxed the defendant copies of documents verifying that the debt was no longer outstanding.

In October 1999, Chiverton began receiving calls from "Steven Deer," the defendant's representative. Chiverton told Deer that he was not permitted to receive personal calls at work and asked Deer not to call him there. Chiverton again explained that he had satisfied the debt and that he previously had supplied the defendant with proof. Deer, in response, called Chiverton a "liar." Deer added that because Chiverton was lying, he was going to report the debt to credit reporting agencies.

In early November, Deer called Chiverton at work several more times. Chiverton repeatedly informed Deer both that he was prohibited from receiving personal calls at work and that he no longer owed the debt. Deer asked to speak with Chiverton's

supervisor. Chiverton insisted that neither Deer nor any other representative of the defendant speak to anyone at his place of work.

Chiverton points to a particular incident in November. On November 9, 1999, Deer called Chiverton at work and demanded payment. Deer told Chiverton that he was "not a regular collection agent. I can call until you pay. I can call you at work as much as I want." Chiverton refused to pay and hung up the phone. Deer immediately called Chiverton back. Chiverton again hung up the phone. Not more than a minute later, Deer called for the third time and Chiverton hung up the phone. Within a minute, Deer called back for the fourth time. Upon hearing Deer's voice, Chiverton hung up the phone. Deer immediately called Chiverton back for the fifth time.

Later that month, despite the plaintiff's admonition, Deer called Chiverton's place of employment and spoke with Chiverton's supervisor, Major Burnside, about the debt he alleged Chiverton owed.

On November 23, 1999, the defendant sent Chiverton a demand letter stating that the plaintiff had unpaid balance of $952.38 at 13.75% annual interest compounded daily as a result of the defaulted loan from Fleet Bank that the defendant had purchased. The letter was signed by Steven Deer of the Federal Financial Group, Inc.

At the hearing, Chiverton testified that the defendant's calls made him nervous because in his position as a fiscal supervisor he was not supposed to have financial problems. He did not want his supervisors to be under the impression that he could not manage money. Chiverton feared that his job might be in jeopardy. At the time, Chiverton was waiting to be commissioned as a second lieutenant, a position for which a security clearance was required. Chiverton was very concerned that the defendant's allegations and conduct would affect his background check and security clearance. He had to explain the situation to both his supervisor, Major Burnside, and an investigator conducting the background check. Although the plaintiff ultimately received his commission, he was anxious and worried that, as a result of the defendant's conduct, he would not.

III. Discussion

The defendant's conduct violated a variety of FDCPA provisions.[3]

15 U.S.C. § 1692c

Section 1692c(a) regulates communication with the consumer. Under this provision, a debt collector may not contact a debtor at

---

[3]Although the plaintiff has alleged that the defendant has violated several provisions of the FDCPA, a single violation of the FDCPA is sufficient to establish a debt collector's civil liability. 15 U.S.C. § 1692k; e.g., Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993); Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993).

any time known to be inconvenient or at work if the debt collector knows or has reason to know that the consumer's employer prohibits such communication. 15 U.S.C. §§ 1692c(a)(1), (3). The defendant violated §§ 1692c(a)(1) and (3) by repeatedly calling Chiverton at work after he expressly requested the defendant not to do so because he was not permitted to receive personal calls at work. See Horkey v. J.V.D.B. & Associates, Inc., 333 F.3d 769, 773 (7th Cir. 2003)(defendant violated § 1692c(a)(3) when it continued to call plaintiff at work after she said that she could not talk while at work); Austin v. Great Lakes Collection Bureau, Inc., 834 F. Supp. 557, 559 (D. Conn. 1993) (defendant's continued attempts to contact plaintiff at her office despite her requests that defendant not call her at work because such calls inconvenienced her violated 15 U.S.C. § 1692c(a)(1)).

    Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector" without the prior consent of the consumer absent certain exceptions. The defendant violated § 1692c(b) by speaking to the plaintiff's supervisor about the plaintiff's alleged debt without the plaintiff's consent. See Austin, 834 F. Supp. at 559 (calling consumer's office and speaking with consumer's secretary violated

§ 1692c(b)).

### 15 U.S.C. § 1692d

Section 1692d prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Section 1692d(2) prohibits a debt collector from using "language the natural consequence of which is to abuse the hearer . . . ." "Abusive language includes religious slurs, profanity, obscenity, calling the consumer a liar or a deadbeat, and the use of racial or sexual epithets." Federal Trade Commission, Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50105 (1988). The defendant violated § 1692d(2) by calling Chiverton a "liar."

Other prohibited conduct includes "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number." § 1692d(5). "[A]ctionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." Akalwadi v. Risk Management Alternatives, Inc., 336 F. Supp.2d 492, 505 (D. Md. 2004). The defendant violated § 1692d(5) by repeatedly calling Chiverton after the plaintiff hung up. See Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1453 (D. Nev. 1994)(defendant violated § 1692d(5) by calling plaintiff twice within a 5 minute period at her place of employment after plaintiff hung up on defendant); Bingham v.

Collection Bureau, Inc., 505 F. Supp. 864, 873 (D.N.D. 1981) (debt collector violated § 1692d(5) by calling debtor immediately after debtor hung up on collector).

### 15 U.S.C. § 1692e

Section 1692e prohibits the "false representation of . . . the character, amount, or legal status of any debt."  The plaintiff had satisfied the debt and sent paperwork, on two occasions, to demonstrate to the defendant that the debt no longer existed.  The defendant's representation that the debt was still outstanding was false and in violation of § 1692e(2).  See Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003)(reversing and remanding district court's order granting summary judgment in favor of defendant as to § 1692e(2) claim because defendant's assertion that plaintiff owed a debt that no longer existed was false).

### 15 U.S.C. § 1692g

The FDCPA "requires that particular language, that has come to be known as the 'validation notice,' be placed in correspondence used to collect debts."  Bleich v. Revenue Maximization Group, Inc., 233 F. Supp.2d 496, 500 (E.D.N.Y. 2002); see 15 U.S.C. § 1692g.  Within five days of the initial communication with a consumer regarding a debt, a debt collector must send a written notice containing a "validation notice," which includes "the amount of the debt, the name of the creditor, a statement that the debt's validity will be assumed unless disputed by the consumer within 30

days, and an offer to verify the debt and provide the name and address of the original creditor, if the consumer so requests." Russell v. Equifax, 74 F.3d 30, 34 (2d Cir. 1996). "Congress designed the Federal Act to [e]liminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid. . . . It added the validation of debts provision specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988) (citation and internal quotation marks omitted). "This debt validation procedure must be clearly communicated to the consumer and courts are loathe to allow debt collectors to vary from, or contradict, the statutory notification. Indeed, the failure to communicate clearly the validation procedure forms the basis of many FDCPA lawsuits." Bleich, 233 F. Supp.2d at 500. In this case, the sole written notice the defendant sent Chiverton was a November 23, 1999 letter, which was well after its initial telephone call to the plaintiff. This tardy notice lacked a statement that the debt's validity would be assumed unless disputed by the consumer within 30 days. The defendant's omission of required information regarding the plaintiff's statutory right to dispute the debt violated § 1692g.

    Damages

Chiverton seeks actual damages pursuant to 15 U.S.C. § 1692k.

Specifically, Chiverton seeks damages for emotional distress he suffered in connection with the defendant's conduct.[4] Damages for emotional distress caused by the defendant's FDCPA violations are recoverable as a part of actual damages under the FDCPA. See Gervais v. O'Connell, Harris & Associates, Inc., 297 F. Supp.2d 435, 439 (D. Conn. 2003)("The FDCPA permits a court to award damages for emotional distress.")  The plaintiff testified at the hearing as to his anxiety, stress and frustration as a result of the defendant's conduct.  He was unnerved and irritated by the defendant's repeated calls.  Chiverton was worried he would lose his job or not be eligible for the promotion for which he was waiting.  He was upset by the defendant's threats to report him to credit reporting agencies and to speak to his supervisor.  Ultimately, Chiverton had to disclose the situation to his boss as well as an investigator, which was uncomfortable and embarrassing.  The court recommends that actual damages in the amount of $5000 be awarded.

Chiverton also seeks statutory damages under the FDCPA.  The maximum statutory damage award under the FDCPA is $1000. 15 U.S.C. § 1692k(a)(2)(A).  "The decision whether to award statutory damages

---

[4]The plaintiff's complaint also states a common law claim for intentional infliction of emotional distress.  At the hearing, plaintiff's counsel stated he was not seeking to recover twice for the same damages, i.e., for emotional distress.  Accordingly because the court awards damages for the plaintiff's emotional distress under the FDCPA, it need not reach the common law claim.

under the FDCPA and the size of any such award are matters committed to the sound discretion of the district court." <u>Savino v. Computer Credit, Inc.</u>, 164 F.3d 81, 86 (2d Cir. 1998). Considering the frequency, nature and persistence of the defendant's noncompliance, <u>see</u> 15 U.S.C. § 1692k(b), the court recommends an award of $1000 in statutory damages.

The plaintiff seeks punitive damages under CUTPA. <u>See</u> Conn. Gen. Stat. § 42-110g(a). The court has discretion to award punitive damages for a CUTPA violation. <u>Votto v. American Car Rental, Inc.</u>, 273 Conn. 478, 485 (2005).

> In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . Accordingly, when the trial court finds that the defendant has acted recklessly, [a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done.

<u>Id.</u> at 486 (citations and internal quotation marks omitted.) The defendant's actions in repeatedly calling the plaintiff at work, threatening to speak to his supervisor and failing to inform him of his legal rights with regard to disputing the debt were recklessly indifferent to the plaintiff's rights. The court finds that punitive damages are appropriate and recommends that they be awarded in the amount of $7500. <u>See</u> <u>Gervais v. O'Connell, Harris & Associates, Inc.</u>, 297 F. Supp.2d 435, 440 (D. Conn. 2003)(awarding plaintiff in default judgment $8000 in punitive

damages under CUTPA for actions that also violated FDCPA).

Chiverton's request for attorney's fees and costs is addressed <u>infra</u> as it is a combined request for both plaintiffs.

IV. <u>Facts as to Collier</u>

The court now turns to plaintiff Collier. In 1998, Collier took out a loan from Fleet Bank. She subsequently defaulted on the loan.

In November 1999, Collier received a call from "Ms. Thomas" ("Thomas"), the defendant's representative. Thomas informed Collier that she was attempting to collect a debt Collier owed. Collier, who was in her seventies, advised Thomas that she was a senior citizen on a very limited income and was not able to pay the debt. Collier requested that Thomas not contact her further concerning the matter. As soon as Collier hung up the phone, Thomas called again, demanding payment. Collier told Thomas not to contact her and hung up the phone. Thomas immediately called back. This time, Thomas told Collier that Collier had to speak to Thomas's supervisor. A man identifying himself as "Steven Deer" ("Deer") got on the phone. In a hostile and aggressive tone, Deer insisted that Collier pay the defendant the monies she owed. Collier again explained that she was a senior citizen on a limited income and not able to repay the loan. Collier asked that Deer not contact her again. Deer asked Collier if she was "old and senile." He accused her of "just sitting on [her] behind doing nothing,

12

collecting a social security check."

Notwithstanding Collier's request that he not call her again, Deer called Collier at least twenty times between November 1999 and January 2000. In addition to speaking with the plaintiff, Deer, without the plaintiff's consent, spoke to Collier's grandson and daughter about Collier's financial situation and the debt he sought to collect. Deer was rude and abusive during these phone conversations. Deer told Collier that she could be arrested for not paying the debt and that she could expect a police officer at her door at any time. The sole correspondence the defendant sent to Collier was a letter dated November 29, 1999 demanding payment within ten days. The plaintiff averred in her affidavit that the defendant's conduct caused her to suffer emotional distress, embarrassment, anxiety and shame.

V. <u>Discussion</u>

The defendant's conduct violated several FDCPA provisions.

<u>15 U.S.C. § 1692c(b)</u>

By conveying information regarding the plaintiff's debt to the plaintiff's family members without her consent, the defendant violated § 1692c(b), which prohibits improper communication with third parties.

<u>15 U.S.C. § 1692d</u>

The defendant's comments regarding the plaintiff's age, mental acuity and activity violated § 1692d(2), which prohibits the use of

13

"language the natural consequence of which is to abuse the hearer."

In addition, the defendant's conduct of repeatedly calling Collier after the plaintiff told the defendant not to contact her violated 15 U.S.C. § 1692d(5), which prohibits "causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number."

### 15 U.S.C. § 1692e

The defendant's threat to have Collier arrested, despite not having committed a crime, if she did not pay the debt violated §§ 1692e(4) and (5). Section 1692e(4) prohibits representing that nonpayment of any debt will result in a person's arrest unless such action is lawful and the debt collector or creditor intends to take such action. Section 1692e(5) prohibits threatening to take any action that cannot legally be taken or that is not intended to be taken. The defendant also violated § 1692e(7), which prohibits misrepresenting or implying that the consumer committed a crime.

### 15 U.S.C. § 1692g

Finally, the defendant failed to comply with § 1692(g). The notice the defendant sent Collier stated, in part, that Collier had ten days from the date of the letter to contact the defendant to make arrangements to settle the debt. The defendant further states that if it did not hear from her within this time frame, it would "assume that [she] had no intention of settling this account

14

without legal action being taken against you and [it would] take action accordingly." (Compl. Ex. B.) The defendant's letter did not include the amount of the debt, the name of the creditor, a statement that the debt's validity would be assumed unless disputed by the consumer within 30 days, and an offer to verify the debt and provide the name and address of the original creditor, as required by § 1692(g).

Damages

Collier seeks actual damages under the FDCPA for emotional distress she suffered as a result of the defendant's conduct. Specifically, she avers that the defendant's conduct caused her to suffer embarrassment, anxiety and shame. The undersigned recommends that the plaintiff be awarded $5000 in actual damages.

The plaintiff also seeks statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). Based on the number and type of violations demonstrated by the plaintiff, the court recommends an award of $1000 in statutory damages.[5]

The plaintiff seeks punitive damages under CUTPA. The court finds that the defendant acted with a "reckless indifference to the rights of others," Votto v. American Car Rental, Inc., 273 Conn. 478, 485 (2005), and that an award of punitive damages is

---

[5]Successful FDCPA plaintiffs are entitled to a maximum award of statutory damages of $1000 per plaintiff. Dowling v. Kucker Kraus & Bruh, LLP., No. 99CIV11958, 2005 WL 1337442, at *3 (S.D.N.Y. June 6, 2005).

15

appropriate. The court recommends that $7500 in punitive damages be awarded.

Finally, the plaintiffs seek recovery of reasonable attorney's fees and costs. Both the FDCPA and CUTPA provide for an award of reasonable attorney's fees. See 15 U.S.C. § 1692k(a)(3); Gebbi v. Cadle Co., 49 Conn. App. 265, 279 (1998). The plaintiffs seek an aggregate of $4374.40 in attorney's fees plus $239.14 in costs. See doc. #18. The court has reviewed the plaintiffs' counsel's affidavit and time records and finds the requested award reasonable. The court recommends that $4613.54 in attorney's fees and costs be awarded.

## VI. Conclusion

Based on the foregoing, the undersigned recommends that the plaintiff Chiverton be awarded damages of $13,500 ($5000 in actual damages, $1000 in statutory damages and $7500 in punitive damages).

The undersigned further recommends that the plaintiff Collier be awarded damages of $13,500 ($5000 in actual damages, $1000 in statutory damages and $7500 in punitive damages).

The undersigned further recommends that the plaintiffs be awarded attorney's fees and costs of $4613.54.

Any party may seek the district court's review of this recommendation. See 28 U.S.C. §636(b) (written objections to proposed findings and recommendations must be filed within ten days after service of same); Fed. R. Civ. P. 6(a), 6(e) & 72; Rule 72.2

of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992) (failure to file timely objections to Magistrate Judge's recommended ruling waives further review of the ruling).

Dated this 9th day of September, 2005 at Hartford, Connecticut.


_____/s/_____
Donna F. Martinez
United States Magistrate Judge